CARGILL, INC., Appellant,

v.

J. B. VAN DEWEGHE et ux., Appellees.

No. 7602.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 20, 1964.

Harry Friedman, Harkness & Friedman, Texarkana, for appellant.

Edward Miller, John D. Raffaelli, Raffaelli & Keeney, Texarkana, for appellees.

CHADICK, Chief Justice.

This suit originated as an action to collect the unpaid balance of two promissory notes and foreclose a mortgage, and in the alternative a suit on open account. The defendants' answer plead a general denial and set up a cross-action for damages occasioned by a breach of contract. The cross-appellants' appeal is dismissed and the judgment of the trial court is reformed and affirmed.

The span of this appeal may be reduced by first determining the validity of a second judgment in the case rendered by the trial judge. The suit went to trial without the intervention of a jury on December 30, 1963. The trial judge signed and entered an original judgment February 13, 1964. On the 56th day after signing and entering the original judgment, that is, on April 9, 1964, the trial judge signed and entered a second judgment. The plenary power of the trial court over its judgment terminated thirty days after entry of the original judgment on February 13. Rule 329b, Sec. 5, Vernon's Ann.Tex.Rules of Civil Procedure; Judgments, 4 Texas Civil Practice (McDonald) 1420, Sec. 18.03. The transcript, including the supplement thereto, does not show notice was given the plaintiff, Cargill, Inc., that a correction of the original judgment was to be made. Correction at the time the second judgment is dated required proceedings in conformity with the nunc pro tunc (Rule 316) or Bill of Review (329b, Sec. 5; Probate Code, § 31, V.A.T.S.) practice. This effort to make a correction without notice at a time after the trial court had lost plenary control of the judgment is ineffective and the second judgment dated April 9, 1964, is a nullity. Williams v. Pitts, 151 Tex. 408, 251 S.W.2d 148; 4 Texas Civil Practice (McDonald), Sec. 17.08, p. 1326.

The cross-appellants, J. B. Van Deweghe and wife, Edna Van Deweghe, filed their appeal bond the 56th day after the entry of the original judgment on February 13, 1964. For this court to have jurisdiction of their cross-appeal their appeal bond must have been filed within thirty days after rendition of the original judgment dated February 13, 1964. Rule 355. The cross-appellants having failed in this respect, this court is without jurisdiction of their appeal and it is dismissed.

Cargill, Inc., the appellant, is the corporate successor to Nutrena Mills, Inc. The record indicates all pertinent transactions prior to suit occurred while the corporation was operating under the name Nutrena Mills, Inc. To lessen confusion the corporation will be referred to hereafter as Nutrena Mills, regardless of the corporate name in use at the time of the occurrence mentioned.

The Van Deweghes' cross-action pleads a contract between the parties, asserts Nutrena Mills breached it, and seeks reimbursement for damages caused by the breach. From the standpoint of the Van Deweghes, the trial judge found and concluded that Nutrena Mills failed to fully comply with an agreement to furnish Nutrena feed to the Van Deweghes (Findings of Fact § 2 and § 5), but devitalized it by finding that damage of $2,736.58 suffered by the Van Deweghes was inflicted on them as the result of Nutrena Mills furnishing the Van Deweghes' moulded chicken feed (Finding of Fact § 14 and Conclusions of Law § 2). From Nutrena Mills' standpoint the trial judge found Nutrena Mills was entitled to recover $2,736.58, the unpaid balance and accrued interest of two notes given Nutrena Mills by the Van Deweghes, and an attorney's fee of $250.00, a total of $2,986.58 (Conclusions of Law § 2).

Nutrena Mills excepted to the finding of fact favorable to the Van Deweghes as being without support in the evidence. Findings of Fact § 2, § 6, and § 14 either directly or by implication constitute findings that Nutrena Mills agreed to and did furnish 16,000 pounds of chicken feed to the Van Deweghes. But the statement of facts contains no evidence to support these findings. A written instrument headed "Nutrena Egg Production Finance Agreement No. 18635" is admittedly the only written contract between Nutrena Mills and the Van Deweghes, the latter are termed therein as "Egg Producer". In this instrument Nutrena Mills agreed to extend financial assistance to the Van Deweghes in the purchase of laying hens for a maximum amount of $3,000.00. These excerpts from the written agreement show the contract's scope and purpose:

"2. Egg Producer may use the financial assistance made available hereunder by Nutrena to purchase, in the manner hereinafter set forth, the following items in amounts which will not exceed a per bird allowance of: Nutrena Feed $ 0 Baby Chicks $ 0 Started Chickens $1.50. * * *

"* * *

"4. Egg Producer agrees to purchase and use only Nutrena Feeds for said chickens and will purchase such feed from Nutrena Mills, Inc., a Nutrena dealer, at Wichita Falls, Texas. (State) Texas. Egg Producer realizes that should he cease to use Nutrena Feeds while any indebtedness is outstanding under the terms of this Agreement, the entire unpaid balance owing shall, at the option of Nutrena, become due and payable immediately. * * *.

"* * *

"16. This Agreement is not intended to be a contract of sale, but, rather, is intended to be a financing agreement setting forth the conditions under which credit may be extended to Egg Producer and, * * *."

Paragraph 4 of the Finance Agreement is designed to place economic pressure upon the Van Deweghes to purchase Nutrena feed for the chickens financed under the

Contract. The provision that the Van Deweghes are to purchase from "Nutrena Mills, Inc., a Nutrena dealer, at Wichita Falls, Texas", imports an understanding that such dealer will sell them feed, but leave indefinite and unspoken the terms of purchase. The Van Deweghes admit that they made no effort to purchase Nutrena feed from any source except A. R. Anderson, an independent merchant. The proof shows that this independent merchant handled Nutrena feed and sold the Van Deweghes the only feed of concern to this suit. The Van Deweghes paid him for it. There is no testimony the Van Deweghes purchased feed directly from Nutrena Mills, or that the relationship of buyer and seller existed between them.

■■ Apparently the feed delivered by A. R. Anderson to the Van Deweghes was manufactured by Nutrena Mills. Under the pleading and proof this fact is immaterial. Breach of warranty was not plead, not even defectively. But if it might be asserted that a breach of warranty action was tried without objection, still the evidence will not support a finding that the feed was moulded when it was delivered by Anderson to the Van Deweghes. Several days after the Van Deweghes took delivery of approximately 2,000 young hens Anderson, the independent merchant, delivered 16,000 pounds of feed and placed it in a feed storage tank on the Van Deweghe farm. It was approximately three weeks after delivery that the Van Deweghes first noticed the moulded condition of the feed. The record contains no proof that the feed was moulded at the time Anderson delivered it, or that the mould condition was inherent in the feed, attributable to or probably caused by or connected with Nutrena Mills. Although decision is grounded on the points discussed, it may also stand on the absence of evidence to support a finding that moulded feed caused sickness to strike among the chickens or caused a decline in egg production.

This court has no choice and must sustain the appellant's points of error directed to these matters. See Appeal and Error, Civil Case, 4 Tex.Jur. (2d) 398 Sec. 839 and cases listed in Footnotes 13, 15 and 16.

In accordance with appellant's first alternative prayer and the judge's findings of fact the judgment of the trial court is reformed to eliminate the award of $2,736.58 allowed as damages to appellee and set off against the $2,986.58 the judge found the appellant entitled to recover, and as reformed the judgment will allow a recovery by the appellant of $2,986.58, instead of $190., with interest, costs, etc., and the cross-appeal is dismissed for the reasons stated in the forepart of the opinion.